## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **NEDRICK J. HARDY, #B-50437,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-0437-MJR** |
| | ) | |
| **ILLINOIS DEPT. OF CORR.,** | ) | |
| **WEXFORD HEALTH SERV. INC.,** | ) | |
| **KIMBERLY BUTLER,** | ) | |
| **JOHN TROST,** | ) | |
| **JOHN R. BALDWIN,** | ) | |
| **SALVADOR GODINEZ** | ) | |
| **JOHN DOE 1 (BAIG),** | ) | |
| **AMY LANG,** | ) | |
| **JANE DOE 1 (RAYBURN),** | ) | |
| **JANE DOE 2 (STEPHANIE),** | ) | |
| **JANE DOE 3 (LORI),** | ) | |
| **GAIL WALLS,** | ) | |
| **FE FUENTES,** | ) | |
| **REGINA PRICE,** | ) | |
| **LORI F. OAKLEY,** | ) | |
| **SUSAN M. HILL,** | ) | |
| **BETSY SPILLER,** | ) | |
| **JOHN DOE 2 (DENTIST),** | ) | |
| **JANE DOE 4 (CLENDENIN),** | ) | |
| **JOHN DOE 3 (MAIL ROOM SUPV.),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

Plaintiff Nedrick Hardy, an inmate who is currently incarcerated at

Menard Correctional Center ("Menard"), brings this action for alleged violations of his

constitutional rights under 42 U.S.C. § 1983, and the Americans with Disabilities Act ("ADA") (Doc. 46). Hardy's original complaint was dismissed for failure to state a claim, and he was simultaneously granted leave to file an amendment, which he did. Upon receipt of Hardy's Second Amended Complaint, the Court appointed counsel to assist Hardy and directed that a Third Amended Complaint be filed. Counsel complied and filed the Third Amended Complaint, which is now before the Court for threshold review pursuant to 28 U.S.C. § 1915A (Doc. 46). The Third Amended Complaint contains eleven or more distinct claims against twenty defendants. Within these claims, the following distinct groupings emerge: deliberate indifference to medical needs; conditions of confinement related to segregation; intentional infliction of emotional distress for medical issues, as well as for denying a funeral furlough; and lack of access to the courts. As to these areas of concern Hardy has named as Defendants: the Illinois Department of Corrections ("IDOC"), Wexford Health Sources, Inc. ("Wexford"), Doctor John Trost, John Baldwin, Salvador Godinez, John Doe 1 ("Baig"), Nurse Amy Lang, Jane Doe 1 (Nurse Rayburn), Jane Doe 2 (Nurse Stephanie), Jane Doe 3 (Nurse Lori), Gail Walls, Doctor Fe Fuentes, Regina Price, Lori Oakley, Susan Hill, Betsy Spiller, John Doe 2 (dentist), Jane Doe 4 (paralegal Clendenin), and John Doe 3 (mail room supervisor). He seeks monetary and injunctive relief in the form of adequate medical treatment.

This case is now before the Court for a preliminary review of the Third Amended Complaint pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

### The Complaint

Hardy generally alleges that upon arrival at Menard, officials and health care providers failed to accommodate his various medical needs (Doc. 46 at 6-10).  For example, Menard staff refused to grant him permits for a waist chain, low gallery, or low bunk—accommodations he had at Stateville (*Id.* at 9).  Hardy also did not receive access to prescription medications or treatment for chronic pain in his back, shoulders, and joints, among other things (*Id.* at 6-9).  Hardy alleges that these shortcomings, and many others, are merely examples of the "widespread and persistent mistreatment of Illinois inmates needing ongoing medical and dental attention" (*Id.* at 13).

After expounding upon his numerous medical and dental issues, Hardy's complaint launches into a defendant-by-defendant listing, wherein he alleges that each defendant participated in denying his needs or violating his rights, or knew of said denial or violation, and thereby violated his rights (*Id.* at 14-33).  Many of the allegations

as to individual defendants generically identify a series of dates upon which Hardy alleges that the defendants became aware of his issues via letters or written grievances, however, the complaint contains no description of the contents of the grievances, nor does it contain details about responses he did or did not receive (*Id.*).  Aside from these generic assertions, Hardy's complaint identifies further particulars regarding a few defendants.

As to Doctor Trost, Hardy alleges that on multiple occasions Dr. Trost specifically and intentionally ignored his serious medical needs and his pleas for attention (*Id.* at 20).  Hardy states the same as to John Doe 1 (*Id.* at 21).  Hardy alleges that he specifically asked Dr. Fuentes for care, and told Fuentes he was not getting care, but received no assistance (*Id.* at 22-23).   He makes identical allegations as to Defendants Lang, Jane Does 1-3, Walls, and John Doe 2 (*Id.* at 24-27).  As to Defendants Price, Oakley, Hill, and Spiller, he alleges that, despite learning of his needs, these defendants failed to investigate his grievances (*Id.* at 28-29).  As to Jane Doe 4, Hardy apparently asked her for access to the courts and legal materials, but she denied his requests or otherwise failed to help him with legal matters (*Id.* at 31-32).  Finally, as to John Doe 3, Hardy alleges that he failed to properly respect legal mail due to overcrowding at Menard (*Id.* at 32-33).

After providing a factual overview of his medical needs and other grievances at Menard, and running through each defendant individually, Hardy then launches into

11 distinct counts.  Notably, Defendants John Doe 2, Jane Doe 4 and John Doe 3 are not specifically named in any of these counts, though presumably they are included in Count 11—a 'catch-all' count about the totality of the conditions at Menard.   The complaint is now before the Court for preliminary screening.

**Discussion**[1]

Based on the allegations, the Court finds it convenient to adopt the division of claims set forth by Plaintiff Hardy. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:** Eighth Amendment deliberate indifference to a serious medical condition claim for failing to provide Hardy with his prescription medications;

**Count 2:** Intentional infliction of emotional distress ("IIED") claim for failing to provide Hardy with his prescription medications for nine months, beginning in October 2014;

**Count 3:** Eighth Amendment conditions of confinement and deliberate indifference to medical needs claim for placing Hardy in a hot segregation cell, despite the fact that it irritated his mental health infirmities;

**Count 4:** IIED claim for the hot segregation cell and lack of deference to Hardy's mental health condition;

---

[1] The Court notes that this Complaint, spanning 49 pages in length, was at times difficult to comprehend, or lacked internal consistency.  To the extent that a claim was overlooked, or misconstrued, the Plaintiff should bring such an error to the attention of all parties and the Court as soon as possible.

**Count 5:**     Eighth Amendment deliberate indifference to serious medical needs claim for failing to issue Hardy permits for a waist chain, low gallery, or low bunk, in accord with previously identified medical needs;

**Count 6:**     IIED claim for denying the various medical permits Hardy previously had at other IDOC facilities;

**Count 7:**     Claim under the Americans with Disabilities Act (ADA) for denying Hardy various medical permits for low bunk, low gallery, etc., in violation of his physical needs;

**Count 8:**     Eighth Amendment deliberate indifference claim for failing to address or treat Hardy's chronic medical conditions including back pain, degenerative disk disease, arthritis in his shoulder, acromioclavicular joint pain, acid reflux disease, a deviated septum, and urinary tract issues;

**Count 9:**     IIED for failing to address Hardy's chronic medical conditions;

**Count 10:[2]**     IIED for denying Hardy's furlough request to attend his daughter's funeral; and,

**Count 11:**     Eighth Amendment claim that the totality of the conditions of confinement are grossly inadequate at Menard.

The Court will also note that, in a number of places in the Third Amended Complaint, Hardy makes reference to Defendant Wexford alleging that it maintains a custom or policy with regard to the medical care it provides at Menard.  However, the

---

[2] In the body of the complaint where the counts are enumerated—Hardy discusses names Defendants Oakley, Hill, and Spiller in connection with this Count—however, the allegations he makes in the listing of defendants about these Defendants contemplates that they overlooked grievances on his medical and dental needs, not his need for a funeral furlough.  As far as the Court can discern, some error has been made in pleading claims against these Defendants.   Accordingly, the Court is dismissing these Defendants without prejudice.  Count 10 also lists Defendants IDOC, Butler, Baldwin, and Godinez, but similarly makes no contentions tying them to the funeral furlough in the "Defendants" section of the Third Amended Complaint—accordingly, they are also dismissed without prejudice.

claim was not set forth as an enumerated count.  In light of this deficiency, the Court is dismissing any claim under this theory without prejudice for failure to clearly state the parameters of the claim.

A majority of the claims in this action relate to allegations of deliberate indifference to a serious medical need, so this section of the memorandum will begin with a basic overview of applicable precedent. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an

individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369. Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer. A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care, or takes steps to verify that the inmate is receiving care. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005). However, individual liability may arise on behalf of a non-medical defendant if the defendant is made aware of a specific constitutional violation via correspondence from the inmate and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Simply put, a prison official may not escape liability by turning a blind eye to serious harms. *Id.* at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it"). At the screening stage of §

1915A review, the district court must consider if "discovery will shed light on whether [. . .] the grievance defendants took the needed action to investigate [a plaintiff's] grievances, and reasonably relied on the judgment of medical professionals" in responding to a given grievance. *Id.* at 782.

In a case where an inmate claims a delay in treatment as opposed to a total denial, the plaintiff must offer some evidence that the delay caused lasting harm. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (finding that a plaintiff may be able to prove to a jury that a delay constituted deliberate indifference where the treating doctor testified that the bones in the hand would begin fusing quickly after an injury, and thus permanent damage may occur quickly). There is no bright line standard for how much of a delay is too much. There is also no bright line standard for how much care must be provided to avoid liability for deliberate indifference. A doctor or prison official is not required to follow the most preferable course of care with precision, but ignoring recommendations of an outside provider may constitute deliberate indifference if doing so would result in the provision of such inadequate care that no reasonable medical official would agree with the course of care provided. *See Perez*, 792 F.3d at 778-79 (collecting cases) ("allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference"); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical

determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"). Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See Holloway*, 700 F.3d at 1073-74. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

The viability of a section 1983 claim turns in part on the nature of the alleged harm, in part on the role of the alleged actor, and in part on the type of relief sought. Section 1983 liability is premised primarily on individual liability of actors for harmful actions they personally took. Thus, to be liable under section 1983 "an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). Monetary damages may be awarded for individual capacity claims. *See id.*

The doctrine of *respondeat superior* does not apply to section 1983 claims; thus, a defendant must be personally liable for the deprivation of a constitutional right. A defendant will be deemed to have sufficient personal responsibility if "he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, a supervisor may be liable for deliberate, reckless indifference to the misconduct of subordinates if it

can be shown that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it for fear of what they might see. *See id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Objectively, Hardy has identified a number of medical conditions that may rise to the level of seriousness contemplated by the Eighth Amendment deliberate indifference line of precedent.  For example, Hardy's allegations of chronic pain from degenerative disk disease, arthritis, and acromioclavicular joint pain are likely the type of chronic and serious conditions that warrant some type of treatment.   *See e.g. Gutierrez*, 111 F.3d 1369.  However, as set forth below with respect to each Count, in most instances, Hardy has failed to allege individual culpability on behalf of the named Defendants sufficient to state a claim against them.

*Count 1 – prescription medications*

Hardy alleges that Defendants IDOC, Wexford, Butler, Dr. Trost, Baldwin, Godinez, John Doe 1, Nurse Lang, Jane Does 1-3, Walls, and Dr. Fuentes were deliberately indifferent by failing to provide him with the needed prescription medications.  In particular, he alleges that during a cell-shakedown his water cup was taken, and after that incident the Defendants knew he had no way to take his medication.  The Court will only allow this claim to proceed as to Defendants Lang and Jane Does 1-3 because Hardy specifically alleges that these individuals came to his cell, saw he had no water cup, and denied him access to needed medications.  By contrast,

the claim will not be allowed to proceed against any of the other Defendants named in association with the denial of medication, because Hardy's bare allegation that those parties became aware of his grievances at Menard via written correspondence, is not sufficient to claim that these individuals or entities personally and intentionally acted to harm him.  A proper claim under section 1983 requires a showing of personal liability. *See Pepper*, 430 F.3d at 810 (finding that 1983 liability must be premised on individual actions).  Moreover, many of the named defendants are not medical professionals, and thus would be inherently less susceptible for liability regarding Hardy's medical needs. *See generally*, *Greeno*, 414 F.3d at 655-67 (discussing the potential liability of supervisory officials for inmate medical issues).

In sum, Count 1 shall proceed against Defendants Lang and Jane Does 1-3 because these individuals were potentially responsible for the direct provision of medication.  Count 1 shall be dismissed without prejudice as to Defendants IDOC, Wexford, Butler, Dr. Trost, Baldwin, Godinez, John Doe 1, Walls, and Dr. Fuentes.

*Count 2 – IIED for withholding prescriptions*

To state a claim for intentional infliction of emotional distress under Illinois law, the plaintiff must allege that the defendant's conduct was extreme and outrageous, the defendant knew it was highly probable that his or her conduct would cause the plaintiff severe emotional distress, and the conduct did in fact cause the plaintiff severe emotional distress.  *See e.g. Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010).  The Seventh

Circuit noted in *Fox* that conduct may be extreme or outrageous in nature in part due to the position of authority of the actor, and whether or not that actor knew given their position of dominance over the complaining party that the conduct would be likely to cause distress.   "[A]s the Illinois Supreme Court has noted, '[b]ehavior that might otherwise be considered merely rude, abrasive, or inconsiderate, may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional distress.'"  *Id.* quoting *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill. 1992).

Here, Hardy's assertions are sufficient to state a claim for intentional distress against Defendants Lang and Jane Does 1-3 for withholding his medication because it is plausible that a prison medical care provider would know that depriving an inmate of needed medication could cause emotional distress.   Unlike an ordinary citizen, a prisoner may be particularly susceptible to emotional distress based on the withholding of certain medical care because he has no other way to secure treatment for himself other than thru internal medical staff.   Thus, Count 2 will be allowed to proceed against Defendants Lang and Jane Does 1-3.   By contrast, Count 2 will be dismissed without prejudice as to Defendants IDOC, Wexford, Butler, Dr. Trost, Baldwin, Godinez, John Doe 1, Walls, and Dr. Fuentes because Hardy has not sufficiently established that these individuals participated in the deprivation of medication, so it is likewise untenable that they intended emotional distress by conduct that they may not have committed.

*Count 3 – Conditions of confinement in segregation*

Hardy alleges that Defendants IDOC, Wexford, Butler, Dr. Trost, Baldwin, Godinez, John Doe 1, Lang, Jane Does 1-3, Walls, and Dr. Fuentes subjected him to unconstitutional conditions of confinement by placing him in a hot segregation cell.  He contends that segregation was uniquely problematic for him because his medications exacerbated his heat sensitivity, something he contends the Defendants knew.  Despite being made aware that Hardy was suffering ill-effects of heat, the Defendants took no action.

Under the Eighth Amendment, life's necessities include shelter and heat, as well as hygiene items. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (citations omitted). Determining what conditions might constitute a violation of the Eighth Amendment is a very factually nuanced inquiry. *See id.* at 492-495 (collecting cases). While certain conditions in isolation may not constitute an Eighth Amendment violation, those same conditions taken together may state a claim. *Id.* at 493. The Seventh Circuit has found that conditions such as confinement in a cold cell without bedding or clothing, confinement without a bed for two days, denial of clothing for three days, and denial of any human interaction or personal property for three days or more could be conditions that contribute to the existence of an Eighth Amendment violation. *See id.* at 492-95. For example, in *Vinning-El v. Long,* 482 F.3d 923, 924 (7th Cir.

2007), the Seventh Circuit found that the plaintiff identified conditions sufficient to proceed beyond summary judgment where he alleged that he was stripped of his clothing, was separated from his personal property and was placed in a filthy disciplinary cell for three days.

By contrast, the Seventh Circuit has found that temporary discomforts or inconveniences are not sufficient to rise to the level of a Constitutional violation. *See e.g. Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (holding that being detained for five days in a roach infested cell without hygiene items was not an Eighth Amendment violation where the incident was isolated to just one inmate); *Stewart v. Wright*, 101 F.3d 704 (Table), *1, *1-2 (7th Cir. 1996) (finding that three days in a 'dry cell' without running water or amenities did not constitute an Eighth Amendment violation). In *Harris*, the Seventh Circuit noted that even though the inmate suffered considerable unpleasantness, the conditions of his confinement did not lead to actual physical harm. *Harris*, 839 F.2d at 1235.

Hardy's allegations are insufficient to state a conditions of confinement claim because he does not specify how long he was forced to endure the heat, he does not identify the specific medications that he believes caused heat sensitivity, he does not indicate who he told about the issue, and he does not indicate what harm he suffered aside from discomfort.  Though there may be facts sufficient to fill these gaps, at this

juncture, Hardy has not presented sufficient factual allegations to proceed beyond threshold screening.  Count 3 is dismissed without prejudice for failure to state a claim.

*Count 4 – IIED for conditions of confinement in segregation*

The standards applicable to this claim are the same as those identified in Count 2.  The Court dismisses Count 4 without prejudice because Hardy failed to make sufficient allegations of "outrageous" conduct to support a claim for intentional infliction of emotion distress against any of the named Defendants.  Though it may be possible that in some circumstance detaining a prisoner in unreasonably hot conditions given his medical needs may be outrageous conduct, Hardy's factual allegations are too vague to allow a claim to proceed at this juncture.

*Count 5 – Deliberate indifference for failing to make medically needed accommodations*

The standards for deliberate indifference are those set forth earlier.  The complete denial of medically needed accommodations, such as a waist chain or low bunk permit, certainly could constitute deliberate indifference depending on how the denial impacted Hardy's daily life, but Hardy has not supplied any facts to indicate just how he was harmed by this alleged conduct.  *Gutierrez*, 111 F.3d at 1369.  He also failed to tie specific defendants to specific acts of denial, thus running afoul of the need to establish personal liability sufficient to support a § 1983 claim.  *See Pepper*, 430 F.3d at 810.  As to Defendants IDOC and Wexford, respondeat superior liability is not available, so he would have to establish liability against these Defendants by alleging a constitutionally

infirm custom or policy—something he could feasibly do, but has not done here. *See*

*Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can

be held liable only if it had a policy or practice that caused the alleged violation of a

constitutional right). Thus, Count 5 will be dismissed without prejudice against all

named Defendants.

*Count 6 – IIED for failing to make medically needed accommodations*

Again, the IIED standards set forth in Count 2 apply to this Count. Hardy has

failed to allege sufficient facts to support an IIED claim with relation the lack of his

medically needed accommodations; because he failed to tie the underlying deliberate

indifference claim to conduct by any specific defendant, he likewise cannot make out a

proper claim for IIED. Accordingly, Count 6 will be dismissed without prejudice as to

all named Defendants.

*Count 7 – ADA claim for failing to make medically needed accommodations*

Hardy claims that Defendants IDOC, Wexford, Butler, Dr. Trost, Baldwin,

Godinez, John Doe 1, Nurse Lang, Jane Does 1-3, Walls, and Dr. Fuentes violated the

ADA by failing to make medically necessary accommodations for him. As an initial

matter, this claim must fail against the individual defendants because the Seventh

Circuit has held that individual employees of the IDOC are not amenable to suit under

the ADA. *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012)

("[E]mployees of the Department of Corrections are not amenable to suit under the

Rehabilitation Act or the ADA").  In accord with *Jaros*, Defendants Butler, Dr. Trost, Baldwin, Godinez, John Doe 1, Nurse Lang, Jane Does 1-3, Walls, and Dr. Fuentes are dismissed with prejudice.

That leaves Defendants IDOC and Wexford.  The ADA claim shall not proceed against the IDOC for monetary damages because it is a state government agency, not subject to suit in federal court for its official actions.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages). However, the claim may proceed to the extent that Hardy seeks injunctive relief—in the form of permits for a waist chain, low bunk, and low gallery, or other similar accommodations.  In *Jaros*, the Seventh Circuit allowed a similar claim to proceed against the IDOC where an inmate was denied a cell with grab bars that would have made moving about the cell and performing routine self-care and hygiene easier.  *Jaros*, 684 F.3d at 672.  Despite the fact that the lack of accommodations did not state a claim under the Eighth Amendment, the Seventh Circuit found that the lack of accommodations may signal a claim under the ADA.  *Id.* at 671-72.  Here, Hardy's allegations against IDOC are similar to those presented in *Jaros*, accordingly, Count 7 will be allowed to proceed against Defendant IDOC.  By contrast, the claim will not be allowed to proceed against Wexford at this juncture because Hardy has not clearly alleged a custom or policy held by Wexford that led to him being deprived of certain

accommodations.  *See Woodward*, 368 F.3d at 927 (finding that in order to state a claim against a corporation, a violative custom or policy must be identified).

Accordingly, Count 7 will be dismissed in its entirety as to all individual named Defendants with prejudice.  Defendant Wexford is dismissed without prejudice.  The claim will proceed against IDOC.

*Count 8 – Deliberate indifference for failing to treat chronic conditions*

Hardy has identified sufficiently serious chronic medical conditions—including degenerative disk disease, arthritic shoulders, and acromioclavicular joint pain—to satisfy the subjective element of deliberate indifference to a serious medical need. However, his pleadings are insufficient as to the subjective component of the analysis because he has failed to allege facts showing specific action by any one individual actor sufficient to support a claim.  *See e.g. Pepper*, 430 F.3d at 810.  He does not say, for example, that, on X date he saw Dr. Trost who declined to provide any treatment for his degenerative disk condition.  Though he does specify at least three dates of treatment— June 4, 11, and 18 of 2014—he does not allege who he saw on those occasions, what symptoms he reported to them, or how they completely denied him care.  The bald assertion that he has chronic conditions and that he filed grievances or asked for treatment, without specifying what grievances or requests were made is insufficient to support a claim.  Moreover, as to Defendant Wexford, Hardy has failed to allege a policy or custom that deprived him of needed treatment.  *See Woodward*, 368 F.3d at 927.

Thus, Count 8 will be dismissed without prejudice against all named Defendants (IDOC, Wexford, Butler, Dr. Trost, Baldwin, Godinez, John Doe 1, Lang, Jane Does 1-3, Walls, and Dr. Fuentes).

*Count 9 – IIED for failing to treat chronic conditions*

The analysis applicable to Counts 2, 4, and 6 also applies to Count 9. Hardy has failed to sufficiently plead a claim for IIED based on a lack of treatment for his chronic conditions because he has not properly identified an actor whose conduct may have been outrageous or intentional. Count 9 is dismissed without prejudice as to all named Defendants (IDOC, Wexford, Butler, Dr. Trost, Baldwin, Godinez, John Doe 1, Lang, Jane Does 1-3, Walls, and Dr. Fuentes).

*Count 10 – IIED for declining Hardy's furlough request*

Hardy alleges that he suffered emotional distress after Defendant Price refused to complete paperwork for his furlough request to attend his daughter's funeral. He alleges that on or about October 14, 2014, he sought Price's assistance, but she refused to fill out furlough paperwork because she believed his sentence was too long for the grant of a furlough, and thus it would be a waste of time to do the tedious paperwork. Though inmates are not *per se* entitled to furloughs, Hardy's allegations go to the emotional effect of Price's conduct, rather than the absolute propriety. It is conceivable that the explicit refusal to complete furlough paperwork could be done in such an outrageous or flagrant way so as to impose emotional distress. *See Fox*, 600 F.3d at 842.

Thus, Count 10 will be allowed to proceed against Defendant Price for further development of the factual record.

*Count 11 – Totality of conditions at Menard*

In the final Count of his complaint, Hardy lumps together all of the issues from the preceding 10 counts, adds a few new allegations (lack of dental care, understaffing, tampering with his legal mail, etc.), and claims that, taken together, his issues amount to deliberate indifference by all of the Defendants. He specifically alleges that the IDOC and Wexford maintain policies or customs that cause or perpetuate the poor living conditions for inmates at Menard.

Recently, the Seventh Circuit has expressed broader acceptance of claims centered on the "totality of conditions" or on violative customs or policies. *See Gray v. Hardy*, 826 F.3d 1000 (7th Cir. 2016) (finding that the totality of conditions at Stateville (including pests, vermins, and birds) that may have exacerbated an inmate's asthma, were sufficient to proceed beyond summary judgment); *Daniel v. Cook County, et al.*, 833 F.3d 728 (7th Cir. 2016) (finding that a violative policy or custom claim may proceed against Wexford for health care where a revolving-door pattern of care made it likely that the plaintiff was unable to identify individual defendants responsible for inadequate care). To establish a conditions of confinement claim, an inmate must allege "(1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measures of life's necessities,' and (2)

where prison officials are deliberately indifferent to this state of affairs." *Gray*, 826 F.3d at 1005.  To establish a claim for a violative policy or custom, an inmate must show "more than deficiencies specific to his own experience[.]"  *Daniel*, 833 F.3d at 734.  In addition to establishing a sufficiently serious condition or group of conditions, an inmate must also demonstrate cognizable harm as a result of the condition(s).  *Id.*  Harm may manifest in the physical form, or as a combination of physical and psychological effects.  *Id.* at 1007.  Deliberate indifference by officials is shown by alleging that the officials knew of and disregarded substantial risks, and, in certain circumstances such knowledge and disregard may be inferred based on the institutional role of the alleged actor.  *Id.* at 1008.

If relying upon indirect proof, an inmate must provide sufficient evidence of "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system."  *Id.* at 735, quoting *Dixon v. Cook Cnty.*, 819 F.3d 343, 348 (7th Cir. 2016).  He must also show that the custom, policy, or practice was the moving force behind the constitutional deprivation, and that the named defendant was deliberately indifferent in propagating or perpetuating said policy, custom, or practice. *Id.* at 735-36.

As to the individual Defendants—Butler, Dr. Trost, Baldwin, Godinez, John Does 1-3, Lang, Jane Does 1-4, Walls, Dr. Fuentes, Price, Oakley, Hill, and Spiller—Hardy has not stated sufficiently particularized allegations as to how these Defendants personally

acted to create unconstitutional conditions of confinement or to provide insufficient medical care. Though he makes sweeping assertions, that he was denied dental care or medical care on multiple occasions, he does not specify what he sought care for, or how the denial caused lasting harm. Accordingly, Count 11 will be dismissed without prejudice as to all individual Defendants.

Hardy's allegations are similarly insufficient against IDOC. In some respects, viewing Hardy's allegations under a totality of conditions analysis suggests that he may have a plausible claim because of the sheer number of issues he identifies. However, the fatal flaw to Hardy's allegations is his failure to identify any concrete and specific injury that has resulted from the totality of these conditions. Unlike the plaintiff in *Gray* who alleged psychological and physical harm from the exacerbation of his asthma by the poor conditions of confinement in the IDOC, Hardy has not identified specific physical or psychological harm that has befallen him. At this juncture, his pleadings are simply too vague to allow this claim to proceed against IDOC.

Finally, Hardy's allegations are insufficient to state a claim for a violative policy or custom on behalf of Wexford. Hardy identifies certain aspects of the medical care system which may be underperforming, such as short staffing, but he has not tied these broad problems to specific harm sustained by himself or others. He has not said, for example, that, due to a lack of dentures he has been unable to eat, or due to a lack of appointments, a chronic condition has been irreversibly exacerbated. Another critical

distinction between Hardy and the plaintiff in *Daniel* is that Hardy was able to identify a number of his care providers individually, suggesting some continuity of care, whereas Daniel was unable to point to specific care providers for liability purposes because he frequently saw new providers. The Seventh Circuit noted that the revolving-door nature of Daniel's care was a factor that weighed in favor of allowing him to proceed with a policy or custom claim. Here, the paucity of evidence about what the policy or custom is, and the ability of Hardy to identify some of his care providers, weighs against allowing him to proceed against Wexford.

The Court is acutely aware that Hardy is bringing allegations against IDOC, Wexford, and the other Defendants, that are characteristic of the type of complaints that arise frequently in litigation from inmates at Menard. The Court does not doubt that there are certain infirmities in the provision of health care and living amenities at Menard, but in order for an inmate to state cognizable claims for those issues, the pleadings must at least give a loose sense of the major w's: who, what, when, and where. In light of the lack of such evidence in the present pleadings, the Court hereby dismisses Count 11 without prejudice as to ALL DEFENDANTS.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Counts 1 and 2 against Jane Does 1-3, whose names are currently unknown. However, these parties must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's

complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 832 (7th Cir. 2009).  In this case, Plaintiff has attempted to provide identifying information in the form of partial names—Jane Doe 1 ("Nurse Rayburn"), Jane Doe 2 ("Nurse Stephanie"), and Jane Doe 3 ("Nurse Lori"). To the extent that this information helps to identify the Defendants, officials are urged to cooperate with formal or informal discovery to assist the Plaintiff in ascertaining the identity of these individuals. Additional guidelines for discovery will be set by the United States Magistrate Judge.

"Depending on the particular circumstances of the case, the court may assist the plaintiff by providing counsel for the limited purpose of amending the complaint; by ordering the named defendants to disclose the identities of unnamed officials involved; by allowing the case to proceed to discovery against high-level administrators with the expectation that they will identify the officials personally responsible; by dismissing the complaint without prejudice and providing a list of defects in the complaint; by ordering service on all officers who were on duty during the incident in question; or by some other means." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996).

Under the circumstances presented, the Court finds that the Warden at Menard is best suited to respond to discovery aimed at identifying the unknown personnel at

the facility. Accordingly, Warden Jeff Hutchinson will be formally added as a defendant, in his official capacity only, for the sole purpose of assisting in identifying the unnamed parties. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d). <u>Once the names of Jane Does 1-3 are discovered, Plaintiff shall file a motion to substitute the newly identified Defendants in place of the generic designation in the case caption and throughout the Complaint.</u> Upon receipt of said motion, this Court will substitute the names of the parties for Jane Does 1-3 and service will proceed against those parties. At that time, the Court will also dismiss the Warden of Menard.

## <u>Disposition</u>

**IT IS ORDERED** that this action shall receive further review as to **DEFENDANTS LANG and JANE DOES 1-3 on COUNTS 1 AND 2, DEFENDANT IDOC ON COUNT 7, and DEFENDANT PRICE on COUNT 10.**

The complaint shall be **DISMISSED without prejudice** as to **DEFENDANTS IDOC, WEXFORD, BUTLER, DR. TROST, BALDWIN, GODINEZ, JOHN DOES 1-3, WALLS, and DR. FUENTES on COUNTS 1-6 and 8-9. DEFENDANTS LANG and JANE DOES 1-4 shall be dismissed without prejudice on COUNTS 3-9. DEFENDANT WEXFORD shall be DISMISSED on COUNT 7 without prejudice.** for failure to state a claim. To the extent **COUNT 10** contemplated **DEFENDANTS IDOC, BUTLER, BALDWIN, GODINEZ, OAKLEY, HILL, and SPILLER**, it is **DISMISSED without prejudice. COUNT 11** shall be **DISMISSED** as to **ALL NAMED**

**DEFENDANTS**.  **DEFENDANTS JOHN DOE 2, JANE DOE 4, and JOHN DOE 3** were not individually named in connection with any count—accordingly they are **DISMISSED without prejudice**.

The Clerk of Court is **DIRECTED** to **ADD DEFENDANT JEFF HUTCHINSON** for purposes of discovery only.

The Clerk of Court shall prepare for **DEFENDANTS LANG, IDOC, PRICE, and HUTCHINSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Hardy. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Hardy, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown "Jane Doe" Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Hardy shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Hardy shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Hardy, and the judgment includes the payment of costs under § 1915, Hardy will be required to pay the full amount of the costs,

regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Hardy is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Hardy is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:  December 6, 2016**

                      **s/ MICHAEL J. REAGAN**
                      **MICHAEL J. REAGAN**
                      **Chief District Judge**