IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NEDRICK JEFFREY HARDY, SR.,               )
                                          )
                    Plaintiff,            )
                                          )
vs.                                       )    Case No.  15-cv-0437-MJR-SCW
                                          )
ILLINOIS DEPARTMENT OF                    )
CORRECTIONS,                              )
AMY LANG,                                 )
JEFF HUTCHINSON,                          )
REGINA PRICE, and                         )
JANE DOE 1, 2, and 3,                     )
                                          )
                    Defendants.           )

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Nedrick Hardy is an inmate in the custody of Defendant Illinois Department of Corrections (IDOC), incarcerated at Menard Correctional Center (Menard).  Plaintiff brought this lawsuit under 42 U.S.C. 1983, alleging violations of his civil rights.  Currently before the Court is Plaintiff's Motion for Leave to File Fifth Amended Complaint (Doc. 79).  The Court **GRANTS** Plaintiff's Motion (Doc. 79), **WILL FILE** the proposed pleading, and, as required by the Prison Litigation Reform Act (PLRA), conducts a merits-based review of that complaint.  Plaintiff's prior motion for leave to file amended complaint (Doc. 66) is **DENIED AS MOOT.**  One point of clarification is needed.  Although Plaintiff refers to the amended complaint he seeks to file as the *Fifth* Amended Complaint, as only three prior complaints have been filed, the Court refers to the latest pleading as the *Fourth* Amended Complaint.

### 1. Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), if the non-moving party does not consent, "[a] party may amend its pleadings . . . only with the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). A court may deny a motion to amend where it would not survive a motion to dismiss. *Foman, v. Davis*, 371 U.S. 178, 182 (1962); *Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985). This policy is intended to prevent defendants from expending more labor to respond to a plaintiff's futile gesture. *Glick*, 766 F.3d at 268-69. A plaintiff cannot rest on mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must raise more than speculation -- it must provide plausible facts on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Here, the Court finds that justice requires it to grant leave for Plaintiff to amend his complaint.

The grant of the motion does not end the matter, however. When an amended complaint is filed, the prior pleading is withdrawn, and the amended pleading is operative. *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008). Therefore, in cases controlled by the PLRA, the Court is required to conduct a prompt, fresh threshold review under 28 U.S.C. 1915A. That statute provides that the court shall review, before docketing if feasible, or as soon as practicable after docketing, a complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. 1915A(a).

### 2. The Fourth Amended Complaint

To start its merits review, the Court summarizes the new complaint. The Court accepts the factual allegations made in the complaint as true, *see Smith v. Peters*, **631 F.3d 418, 419 (7th Cir. 2011)**, while keeping in mind that some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim, *Brooks v. Ross*, **578 F.3d 574, 581 (7th Cir. 2009).** Plaintiff raises most of the same allegations he raised in the Third Amended Complaint.

Plaintiff first alleges that certain staff and officials at Menard failed to provide him with certain prescribed medications. According to Plaintiff, prior to October 31, 2014, he was prescribed medications for ailments including bipolar disorder, schizophrenia, attention deficit disorder, high blood pressure, acid reflux, and a deviated septum. On October 31, 2014, Menard's tactical team conducted a search of his cell. After the search, a clear plastic cup that Plaintiff used to take his medication was gone. Subsequently, nurses Amy Lang, Christi Rayburn, Lori Cady, and Gail Walls all refused to administer Plaintiff's prescribed medication to him since he did not have a cup of water with which to take the medicine. Kim Butler, the then warden of Menard, was notified that Plaintiff was not receiving his medication via two grievances, dated September 4 and September 11, 2014. Warden Butler denied these grievances.

Plaintiff also alleges he was subjected to extreme heat during a period of time in Spring to Fall 2014. These allegations are as follows. From May 21, 2014 to October 20, 2014, Plaintiff was in disciplinary segregation and exposed to extreme heat, including a

period of over seven days of temperatures in excess of 100 degrees. He also was suffering from heat sensitivity during this time due to the medications he was taking. Prior to July 15, 2014, Plaintiff notified nurse Amy Lane that his medications, combined with the heat, were causing him to suffer from, among other things, dizziness, light-headedness, and urinary incontinence. He requested medical care and evaluation from Ms. Lane; however, she ignored his requests. At some point during Plaintiff's time in disciplinary segregation, the director of the IDOC, Salvador Godinez, was on a tour of Menard, and Plaintiff personally informed Director Godinez of the effects from which Plaintiff was suffering due to his medication and the heat. Plaintiff requested medical care, but his requests were ignored by Director Godinez.

Plaintiff filed a grievance on July 15, 2014 regarding the heat and its effects. This grievance was reviewed by Nurse Crane, who responded via letter over a month later, and instructed Plaintiff to "'follow sick call procedures for further medical/mental health concerns'" and took no other action. Plaintiff then filed an emergency grievance on August 25, 2014 raising the same issues. That grievance was reviewed by Warden Butler, and she deemed the grievance an emergency. Plaintiff attached the emergency grievance to the Fourth Amended Complaint. The grievance was reviewed by a grievance officer who inquired with medical staff at Menard. The medical staff indicated that there was no indication of heat sensitivity in Plaintiff's records, and there was no indication that Plaintiff was decompensating while housed in segregation. A major in charge of the cell house also informed the grievance officer that heat

prevention protocols were being adhered to. Based on his review of the information provided, the grievance indicates that the grievance officer recommended that the grievance be denied as moot, and Warden Butler concurred. Plaintiff, therefore, remained in segregation.

Plaintiff also claims that he suffers from several physical ailments, such as back, knee, and joint pain, and degenerative disk disease. He alleges he requires a waste chain, low bunk, and low gallery to accommodate these disabilities. Plaintiff has not received a waist chain, and nor has he been placed on low bunk/low gallery, which has caused further deterioration of Plaintiff's physical condition and unnecessary pain and suffering, as well as, limitations in major life activities, including walking, standing, bending, and caring for himself.

In addition, Plaintiff alleges that Nurse Lane refused to treat Plaintiff for his chronic medical conditions on several occasions, including June 4, 2014, June 11, 2014, and June 18, 2014. According to Plaintiff, on these and other occasions, he requested treatment from Lane for his various medical conditions, and Lane refused to treat Plaintiff because he could not pay a co-pay due to inadequate funds. Nurse Lane's refusal to treat Plaintiff caused him pain and emotional distress.

Finally, Plaintiff presents allegations against counselors Regina Price and Betsy Spiller. Plaintiff alleges that he requested to complete paperwork to allow him furlough to attend his daughter's funeral. Counselor Price, in violation of IDOC policy, refused to complete the furlough paper work due to the amount of work it would take, and

because she believed it would be denied. Ms. Price spoke with Counselor Spiller regarding the matter, and Ms. Spiller also refused to complete the paper work. As a result , Plaintiff suffered severe emotional distress.

### 3. Merits Review

When conducting a merits review pursuant to the PLRA, the Court must identify cognizable claims or dismiss any portions of the complaint that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant with immunity. **28 U.S.C. 1915A(b).** In the process of this review, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." ***Brooks*, 578 F.3d at 581**. Nonetheless, a court should liberally construe the factual allegations of a *pro se* complaint. ***See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009)**. Plaintiff divided his Fourth Amended Complaint into 13 counts, which the Court now addresses in turn.

### a. Count I: Failure to Provide Prescribed Medications against Defendants Butler, Lang, Walls, Rayburn, and Cady

Plaintiff attempts to raise a claim of deliberate indifference in violation of the Eighth Amendment against the defendants in Count I. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. ***Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*,**

**577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.").** A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Holloway v. Delaware Cnty. Sheriff*, **700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).** Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See Holloway*, **700 F.3d at 1073-74**. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* **at 1073**.

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at 653.** A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the *Eighth**

*Amendment* **requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm.")** **(internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno***, 414 F.3d at 652-53**.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of — and then disregards — an excessive risk to inmate health. *Greeno***, 414 F.3d at 653.** The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder***, 546 F.3d 516, 524 (7th Cir. 2008).** Deliberate indifference is not negligence; rather it is more akin to intentional wrongdoing. *McGee v. Adams***, 721 F.3d 474, 480 (7th Cir. 2013).** The standard is criminal recklessness, and even gross negligence will not meet this standard. *Id.* **at 481**.

The Court has no doubt that many of Plaintiff's ailments, including bipolar disorder, schizophrenia, and high blood pressure, constitute objectively serious medical conditions. The question as to Count I is whether Defendants knew of Plaintiff's serious medical condition and consciously disregarded it. Plaintiff has sufficiently stated a claim against the nurse defendants — Lang, Rayburn, Cady, and Walls. From the allegations, it could easily be inferred that these Defendants knew what medications they were administering to Plaintiff, and for what purpose. Their refusal to administer

the medication to Plaintiff simply because Plaintiff did not possess a cup would constitute deliberate indifference.

Plaintiff has also successfully stated a claim against Warden Butler by alleging that Warden Butler was aware of the fact that Plaintiff was not receiving his medication via two grievances and then denied those grievances. Though Plaintiff did not allege that Warden Butler undertook to treat him, per the Seventh Circuit, Plaintiff's grievances addressed to her may show that she knew of Plaintiff's serious medical need and refused to intervene. *See Perez v. Fenoglio*, **792 F.3d 768 (7th Cir. 2015)**. Therefore, at this juncture, Count 1 shall proceed against Warden Butler.

### b. Count II: Intentional Infliction of Emotional Distress against Defendants Butler, Lang, Walls, Rayburn, and Cady

Plaintiff also uses the factual allegations in Count I to raise a claim for intentional infliction of emotional distress (IIED) in Count II. To prevail on an IIED claim under Illinois state law, a plaintiff must allege (1) that the defendants' conduct was extreme and outrageous, (2) that the defendants knew that there was a high probability that their conduct would cause the plaintiff severe emotional distress, and (3) that the defendants' conduct in fact caused the plaintiff severe emotional distress. *Fox v. Hayes*, **600 F.3d 819, 842 (7th Cir. 2010) (citing** *Kolegas v. Heftel Broadcasting Corp.***, 607 N.E.2d 201 (Ill. 1992))**. To satisfy the "extreme and outrageous" requirement, the defendant's conduct must be so extreme "as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas***, 607 N.E.2d at 211 (citing Restatement (Second) of Torts § 46, Comment** *d***, at 73 (1965))**.

"Mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" do not rise to the level of outrageous conduct.  *Kolegas*, **607 N.E.2d at 211 (quoting** *McGrath v. Fahey*, **533 N.E.2d 806 (Ill. 1988)) (internal quotations omitted)**.  A factor to be considered is whether the defendant was aware of any susceptibility of the plaintiff to emotional distress due to some physical or mental condition.  *Kolegas*, **607 N.E.2d at 211.**

For purposes of threshold review, Plaintiff has stated a claim for IIED against the Defendants in Count I.  It is plausible that a medical care provider would know that depriving an inmate of prescribed medication could cause emotional distress, particularly when some of the medication was for the treatment of mental health conditions, and depending on the circumstances, such acts or omissions could "go beyond all possible bounds of decency."

### c. Counts III & IV: Failure to Provide Medical Treatment for Heat-Related Issues and Intentional Infliction of Emotional Distress against Defendants Godinez, Lane, Crane, and Butler

Plaintiff has stated a claim for deliberate indifference and IIED relating to his heat-related medical issues against Nurse Lane and Nurse Crane.  The allegations against Nurse Lane demonstrate clear deliberate indifference by her alleged action of ignoring Plaintiff's request for medical care.  And deliberate indifference on the part of Nurse Crane can plausibly be inferred even though she sent a letter in response to Plaintiff's grievances.  If proven at trial, a jury could find that by merely instructing Plaintiff to follow sick call procedures and taking no other action, Nurse Crane

consciously disregarded Plaintiff's serious medical needs associated with the extreme heat and his sensitivity to it. Furthermore, depending on the specific facts, a medical professional disregarding Plaintiff's requests for medical care relating to severe heat could amount to intentional infliction of emotional distress. Plaintiff's IIED claims against Nurse Lane and Nurse Crane shall go forward.

The Fourth Amended Complaint fails to state claims against Director Godinez and Warden Butler under Counts III and IV, however. To be liable on a § 1983 claim, a defendant must have "caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, **430 F.3d 805, 810 (7th Cir. 2005) (quoting** *Wolf-Lillie v. Sonquist*, **699 F.2d 864, 869 (7th Cir. 1983)) (internal quotations omitted)**. Section 1983 does not provide for vicarious liability. *Burks v. Raemisch*, **555 F.3d 592, 593 (7th Cir. 2009)**. While, in some cases, a prison official who has reviewed a grievance may be liable for deliberate indifference if action is not taken as a result of the information presented in the grievance, *see Perez*, **792 F.3d 768**, it is also the case that, generally, prison officials are entitled to rely on the judgment of medical professionals treating an inmate. *Rasho v. Elyea*, **856 F.3d 469, 478 (7th Cir. 2017)**; *Arnett v. Webster*, **658 F.3d 742, 755 (7th Cir. 2011)**.

On the face of the Fourth Amended Complaint, Plaintiff's only non-conclusory allegations against Warden Butler in Count III are that he sent a grievance indicating his concerns that his medications were causing him to feel extreme effects of the heat in segregation; that Warden Butler deemed the grievance an emergency and expedited it;

and that she ultimately denied the grievance, thus allowing Plaintiff to remain in segregation. Plaintiff's allegations along with the August 25, 2014 grievance attached to the Fourth Amended Complaint, however, plead Plaintiff's heat-related claims against Warden Butler out of court. Along with demonstrating that, as Plaintiff alleges, Warden Butler deemed Plaintiff's grievance an emergency, the grievance also shows that she denied the grievance after the grievance officer recommended the grievance be deemed moot per discussions with medical and mental health staff, as well as, the cell house major. The grievance itself, therefore, demonstrates that Warden Butler denied the grievance in relying upon the judgment of medical personnel and her subordinates, as she is entitled to do. While Warden Butler could be liable if she had actual knowledge, or a reason to believe, that medical personnel were mistreating or not treating Plaintiff, *Arnett*, **658 F.3d at 755**, Plaintiff does not allege such knowledge as to the warden, and nor is such knowledge plausibly inferred from the grievance, particularly given that Warden Butler first deemed the grievance an emergency for expedited review. And Warden Butler's conduct in ensuring the grievance was reviewed on an expedited basis, and denying the grievance based on information and recommendations from subordinates, cannot be said to have been "extreme and outrageous." Plaintiff has failed to state claims for deliberate indifference and IIED against Warden Butler, and Counts III and IV are **DISMISSED** as to Warden Butler.

Nor do Counts III and IV state claims for relief against Director Godinez. While the allegations that Plaintiff personally informed Director Godinez of his heat-related

issues, and that the director did nothing, would likely state a claim against Mr. Godinez if he were the *warden* of Menard, they are not sufficient to state a claim against a *director* of the IDOC. Guidance from the Seventh Circuit in *Burks v. Raemisch* is instructive. There, the court made note of the division of labor within bureaucratic organizations and cautioned against imputing liability to any public official with knowledge of an inmate's problem:

> [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor…and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter, the *Superintendent of Prisons* and the Warden of each prison, *is entitled to relegate* to the prison's medical staff the provision of good medical care.

**Burks, 555 F.3d at 595 (emphasis added)**.

Director Godinez cannot be liable for deliberate indifference based on a single complaint made by an inmate during a prison tour. Analogous to the Seventh Circuit's example, to hold the director liable under such allegations would be to open up the IDOC Director to deliberate indifference lawsuits based on inmates shouting complaints to the Director during facility tours. Such a situation could have a chilling effect on facility tours, and the IDOC Director should be encouraged, rather than deterred, to tour and examine prison facilities. Further, while the alleged interaction between Plaintiff and Director Godinez was an in-person complaint, the Court finds the interaction to be closely akin to a complaint made in a letter.

The important distinction, of course, is that with an in-person interaction, the director could see for himself Plaintiff's condition. For instance, if during a tour, Director Godinez saw an inmate severely bleeding and lying on the ground and ignored the inmate, the inmate may have a claim. There are no allegations regarding Plaintiff's condition at the time of his complaint to Director Godinez, however. Menard is a big facility, and the Fourth Amended Complaint does not allege where in Menard the interaction took place, and nor does it make allegations as to Plaintiff's physical condition or even the temperature in the location at the time. To hold the Director of the IDOC liable on a mere complaint by an inmate, even a verbal one, would raise the same problems stemming from liability from letters highlighted by the Seventh Circuit in *Burks*. For these reasons, Plaintiff cannot state a claim for relief for either deliberate indifference or IIED against Director Godinez on the allegations raised. Counts III and IV are **DISMISSED** as to Director Godinez.

### d. Count V: Violation of the Rehabilitation Act against IDOC

Plaintiff also includes a count under the Rehabilitation Act (RA) against IDOC in relation to a failure to provide him with a waist chain, low bunk, low gallery permit. The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." **29 U.S.C. 794(a)**. The Seventh Circuit has found that the RA and the ADA are "co-extensive" and that the

analysis is the same except that the RA requires an "additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671-72 (7th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4 (2005); *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 678 (7th Cir. 2010)).

Thus, to state a claim under the RA, the Plaintiff must establish that: "(1) he is qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 672 (citing 29 U.S.C. § 705(2)(B); *Wisconsin Cmty. Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997)).

Although the RA does not expressly require accommodation, the Supreme Court has located a duty to accommodate in the statute generally. Thus, a refusal to make reasonable accommodations for Plaintiff's disability caused by his various physical ailments, resulting in Plaintiff being limited in major life activities is tantamount to denying access under the RA. *See Jaros*, 684 F.3d at 672; *Cardenas-Uriarte v. United States*, No. 014-CV-00747-JPG, 2014 WL 3635700, at *4 (S.D. Ill. July 23, 2014). Furthermore, since Illinois has waived its immunity from suits for damages under the RA as a condition of its receipt of federal funds, Plaintiff's RA claim against the IDOC shall go forward for both damages and injunctive relief. *See Jaros*, 684 F.3d at 672 n. 5; *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000). *See also, Rittenhouse v. Board of Trustees of Southern Illinois University*, 628 F.Supp.2d 887, 895 (S.D. Ill. 2008).

Count V shall not proceed as part of this action, however, and shall proceed in a separate lawsuit. The Seventh Circuit has repeatedly warned the district courts "not [to] allow inmates to flout the rules for joining claims and defendants, or to circumvent the [PLRA's] fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, —F.3d—, 2017 WL 2655424, at *1 (7th Cir. June 20, 2017) (citations omitted). *See also Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (stating that complaints that fail to observe the joinder of parties requirements in Federal Rule of Civil Procedure 20(a)(2) should be rejected, either by severing claims or dismissing improperly joined defendants); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits.").

Very recently, the Seventh Circuit again "urge[d] the district courts to be alert to this problem." *Owens*, 2017 WL 2655424, at *1. This Court heeds the Seventh Circuit's urging and hereby severs Count V into a separate lawsuit. As discussed below, IDOC is dismissed from the remainder of the claims brought against it, and, therefore, Plaintiff has no other claims in this suit against IDOC. Moreover, the allegations in Count V do not arise "out of the same transaction, occurrence, or series of transactions or occurrences" as the other claims in Plaintiff's complaint that are being allowed to go forward. *See* FED. R. CIV. P. 20(a)(2). Plaintiff will be required to pay the filing fee in the separate suit, or apply for IFP status. Plaintiff's assigned counsel in this matter is not obligated to represent Plaintiff in any separate lawsuit created from claims severed in this action.

### e. Counts VI & VII: Failure to Provide Medical Treatment for Chronic Medical Conditions and IIED against Defendant Lane

Plaintiff's claims against Nurse Lane relating to her refusal to treat his chronic medical conditions shall go forward. Nurse Lane's refusal to treat Plaintiff for his chronic medical conditions for a mere inability to pay a co-pay, if true, would constitute deliberate indifference to Plaintiff's serious medical needs. In addition, the same rationale provided in regards to the IIED claims against the medical providers in Counts II, and IV applies as to Count VII and Plaintiff's IIED claim against Nurse Lane in that count shall go forward.

### f. Count VIII: IIED against Defendants Price and Spiller

For purposes of threshold review, Plaintiff has stated a claim for IIED under Count VIII. <u>However, this claim shall go forward in a separate suit</u>. Though Plaintiff may ultimately have causation issues if it is shown that he would have been denied furlough even if the requisite paper work was completed, Counselors Price's and Spiller's refusal to process Plaintiff's paper work to request furlough to attend his daughter's funeral could be found to have been extreme and outrageous. Further, Ms. Price and Ms. Spiller could at least have known that their refusal to process the paper work due to the fact they did not want to do the work, would lead to a high probability for emotional distress for Plaintiff. If true, a jury could find that their conduct was "so extreme as to go beyond all possible bounds of decency, and [is] to be regarded as intolerable in a civilized community." *Kolegas*, **607 N.E.2d at 211**.

Like Count V, however, the allegations raised in Count VIII do not arise out of the same transaction or occurrence as any of the other allegations in the Fourth Amended Complaint, and neither of the Count VIII defendants is a defendants in any other count. Severance is appropriate. While Defendant Price was already a defendant in this matter, Plaintiff's proposed Fourth Amended Complaint adds Defendant Spiller. In the severed suit, however, Defendant Spiller will not be added as a defendant until Plaintiff pays the requisite filing fee.

### g. Counts IX & X: Monell Claims against Defendants Godinez, Baldwin, Butler, Lashbrook, and Wexford

Plaintiff alleges two *Monell* claims -- one based on failure to provide medical treatment and a second premised on IIED. In his non-conclusory allegations in Count XI, Plaintiff asserts that Defendants Godinez, Baldwin, Butler, Lashbrook, and Wexford Health Sources, Inc. (Wexford) "maintained policies, procedures, customs or practices" in which the defendants' "employees" essentially failed to provide medical care as demonstrated by the aforementioned allegations relating to medical care, and that these policies, etc. were so prevalent as to put the defendants on actual notice of the policies' existence. While Plaintiff has sufficiently alleged a claim for unconstitutional policies or customs against Wexford in Count IX, the individual defendants—who are directors and wardens—shall be dismissed.

In *Monell v. Dept. of Social Services of City of New York*, the Supreme Court held that municipalities could be liable for unconstitutional policies and customs under

§ 1983. **436 U.S. 658, 694 (1978)**.  The Seventh Circuit has extended *Monell* to private entities.  *See Shields v. Ill. Dept. of Corr.*, **746 F.3d 782 (7th Cir. 2014) (citing cases)**.  Therefore, on the facts alleged in the Fourth Amended Complaint, Plaintiff has stated a *Monell* claim against Wexford in Count IX.

As for the individual defendants, however, they cannot be held liable in their policymaking capacity.  Section 1983 does not provide for recovery under a theory of vicarious liability.  *Burks*, **555 F.3d at 593 – 94 (citing *Monell*, 436 U.S. 658)**.  Though Plaintiff alleges the individual defendants had knowledge of the unconstitutional policies and customs, "mere knowledge" of subordinates' unconstitutional conduct is insufficient to be held liable under 1983.  *See Iqbal*, **556 U.S. at 667**.  "[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*  While a supervisor can be liable if she desired or intended for the unconstitutional conduct to occur, *Vance v. Rumsfeld*, **701 F.3d 193, 203 (7th Cir. 2012)**, there are no allegations here to indicate the individual defendants intended or desired the unconstitutional policies or customs.  Rather, the purported constitutional violations are premised on knowledge, which alone is insufficient to hold the individual supervisory defendants liable.  *See Iqbal*, **556 U.S. at 667;** *Vance*, **701 F.3d at 205 ("[H]eads of organizations have never been held liable on the theory that they did not do enough to combat subordinates' misconduct, and the Supreme Court made it clear in *Iqbal* that such theories of liability are unavailing.")**.  Count IX shall go forward as against Defendant Wexford only.  Count IX is **DISMISSED** as to the remaining defendants.

In Count X, Plaintiff brought another *Monell* claim against the same defendants listed in Count IX.  The Count X claim, however, is premised upon IIED.  Count X shall be dismissed.  *Monell* is an extension of liability specifically stemming from § 1983, ***see Monell*, 436 U.S. at 662, 694**, and to state a claim under that statute, a plaintiff must allege the violation of a *federal* constitutional right or law, ***West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States….")**.  IIED is a state law cause of action sounding in tort.  Since Count X does not allege the violation of a federal constitutional right or federal law, Count X is **DISMISSED with prejudice**.

### h.  Count XI: Totality of Living Conditions at Menard as Violation of Eighth Amendment against IDOC, Godinez, Butler and Lashbrook

Finally, Plaintiff also brings an Eighth Amendment claim in Count XI based on the totality of the living conditions at Menard.  Plaintiff brings this count against IDOC, Director Godinez, and Wardens Butler and Lashbrook.  The Court will not recite the entirety of the allegations raised in Count XIII.  It suffices to say that Plaintiff raises a plethora of complaints relating to the general conditions at Menard, including claims relating to the medical care provided, as well as the infrastructure and the staffing.  In its Order addressing Plaintiff's previous complaint, this Court dismissed a similar count against individual defendants due to Plaintiff's failure to plead "sufficiently particularized allegations as to how [those] Defendants personally acted to create unconstitutional conditions of confinement or to provide insufficient medical care." (Doc. 47, p. 22 – 23).  Plaintiff's Fourth Amended Complaint does not cure this defect.

As already discussed, to hold the individual defendants liable, Plaintiff must allege personal involvement in the deprivation of his rights. Plaintiff has failed to allege what the individual defendants did to personally cause the conditions he alleges.

Though Plaintiff may have a stronger argument for Count XI proceeding against IDOC under a claim of unconstitutional policies/practices, Count XI must ultimately be dismissed against IDOC as well. In its previous threshold review Order, the Court found that Plaintiff's fatal flaw in his totality of conditions claim as against IDOC was that he failed to identify a particular harm that had befallen him. (Doc. 47, p. 23). Plaintiff now has specifically listed a multitude of alleged unconstitutional conditions, but he has made allegations of harm only as to some of conditions, not all. Further, in some instances, Plaintiff makes vague assertions of harm, such an allegation that double-celling "upon information and belief, is a detriment to Mr. Hardy's psychological and physical state."

Given the Seventh Circuit's recent urging to the district courts to be alert to inmates attempting to "flout the rules for joining claims and defendants," *Owens*, **2017 WL 2655424 at \*1,** the Court is particularly cautious in examining Plaintiff's totality of the conditions claim. The Court is cognizant that inmates could attempt to use such a claim to avoid the federal rules governing joinder and bring unrelated claims in a "shotgun" complaint, with the totality of the circumstances claim acting as the glue keeping the claims in one lawsuit. This Court will do what it can to avoid incentivizing inmates to plead their claims in such a manner. While Plaintiff has articulated some

separate harms stemming from some alleged infractions, he has not alleged an overall specific harm or harms stemming from the totality of the conditions. To allow Plaintiff to go forward on his claim in Count XI without alleging a common harm stemming from Menard's conditions, would be to essentially allow Plaintiff to bring in one lawsuit what would otherwise be completely separate claims.[1] Count XI is **DISMISSED**.

### 4. Conclusion & Disposition

For the reasons stated above, Plaintiff's Motion for Leave to File Fifth Amended Complaint (Doc. 79) is **GRANTED**. In addition, pursuant to its merits review, the Court takes the following actions:

- All claims in Counts I and II shall go forward;

- Plaintiff's claims in Counts III and IV as to Defendants Lane and Crane shall go forward;

- Counts III and IV are **DISMISSED** as to Defendants Godinez and Butler;

- Count V against IDOC shall go forward; however, it shall be **SEVERED** into a separate lawsuit;

- Counts VI and VII shall go forward;

- Count VIII against Defendants Price and Spiller shall go forward; however, it shall be **SEVERED** into a separate lawsuit;

- Count IX is **DISMISSED** as to Defendants Godinez, Baldwin, Butler, and Lashbrook;

- Count IX shall go forward as to Defendant Wexford;

---

[1]     For instance, in Count XI, Plaintiff makes allegations relating to deficient medical care, poor plumbing, inadequate ventilation, double-celling, and inadequate staffing of the law library, among many other things.

- Count X is **DISMISSED with prejudice**;

- Count XI is **DISMISSED**.

For any new lawsuit created as part of a count being severed, Plaintiff shall be required to pay the filing fee in the separate suit or apply for IFP status in that new case. The Clerk of Court is **DIRECTED** to add as Defendants to this lawsuit, Kim Butler, Christi Rayburn, Gail Walls, and Amy Lane. Plaintiff's counsel is responsible for effecting service on these Defendants.

IT IS SO ORDERED.

DATED September 22, 2017.

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
United States District Judge