UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NEDRICK JEFFREY HARDY, SR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:15-CV-0437-GCS |
| KIMBERLY BUTLER, LORI CADY, ANGELA CRAIN, AIMEE LANG, CHRISTI RAYBURN, and GAIL WALLS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

## INTRODUCTION AND BACKGROUND

Pending before the Court is Defendants' motion for summary judgment (Doc. 177, 178). Plaintiff Nedrick Jeffrey Hardy opposes the motion (Doc. 185).[1] For the reasons set forth below, the Court denies the motion for summary judgment.

Hardy, an inmate of the Illinois Department of Corrections ("IDOC") incarcerated at Menard Correctional Center ("Menard"), filed a *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights (Doc. 1). Hardy, through court appointed counsel, filed a Fourth Amended Complaint containing allegations against Defendants Kimberly Butler, Lori Cady, Angela Crain, Aimee Lang, Christi Rayburn, and Gail Walls

---

[1] The Court assigned Attorney Lisa to represent Hardy on March 2, 2016 (Doc. 37).

regarding the medical care he received at Menard (Doc. 88). Hardy alleges that staff and officials at Menard failed to provide him with certain prescribed medications. Prior to October 31, 3014, Hardy was prescribed medications for bipolar disorder, schizophrenia, attention deficit disorder, high blood pressure, acid reflux and a deviated septum.

On October 31, 2014, Menard's tactical team conducted a search of his cell. After this search, a clear plastic cup that Hardy used to take his medications went missing. Hardy alleges that Lang, Rayburn, Cady and Walls all refused to administer his prescribed medications to him since he did not have a cup of water with which to take the medicine. As to Butler, Hardy alleges that he notified her that he was not receiving his medications through the filing of two grievances dated September 4, 2015 and September 11, 2015. Butler eventually denied those grievances.

Hardy also alleges that he was subjected to extreme heat from May 21, 2014 to October 20, 2014, while he was in disciplinary segregation. He claims he was exposed to such heat, which included a seven day stretch where temperatures exceeded 100 degrees. In addition, Hardy claims that he was suffering from heat sensitivity during this time due to the medications he was taking. Prior to July 15, 2014, Hardy notified Lang that his medications, along with the heat, were causing him to suffer, *inter alia*, dizziness, light-headedness and urinary incontinence. He asked for medical care and evaluation from Lang, and she ignored him.

On July 15, 2014, Hardy filed a grievance regarding the heat and its effects. A month later, Nurse Crain responded to the grievance via letter and told Hardy to "'follow sick call procedures for further medical/mental health concerns'" and took no action. On

August 24, 2014, Hardy filed an emergency grievance regarding the same issues. Warden Butler deemed the grievance an emergency. The grievance officer reviewed the grievance and inquired with the medical staff. The medical staff reported that there was no indication of heat sensitivity in Hardy's records and there was no indication that Hardy was decompensating while housed in the segregation unit. A major also indicated that heat prevention protocols were being followed. Thus, the grievance officer recommended that the grievance should be denied as moot, and Warden Butler concurred.

Further, Hardy alleges that Nurse Lang refused to treat his chronic medical conditions on several occasions, including on June 2, 2014, June 11, 2014 and June 18, 2014. Hardy alleges that he requested treatment from Lang for his various medical conditions. However, Lang refused to treat him because he could not pay a co-pay due to inadequate funds.

Following a threshold review of the Fourth Amended Complaint pursuant to 28 U.S.C. § 1915A, Hardy was permitted to proceed on the following claims:

> **Count 1** - Butler, Lang, Walls, Rayburn and Cady were deliberately indifferent to Hardy's serious medical needs in violation of the Eighth Amendment for failure to provide prescribed medications;
>
> **Count 2** - a state law claim for intentional infliction of emotional distress ("IIED") against Butler, Lang, Walls, Rayburn and Cady for failure to provide prescribed medications;
>
> **Count 3** - Lang and Crain were deliberately indifferent to Hardy's serious medical needs in violation of the Eighth Amendment for failure to provide medical treatment for heat-related issues;
>
> **Count 4** – a state law claim for IIED against Lang and Crain for failure to provide medical treatment for heat-related issues;

> **Count 6 –** Lang was deliberately indifferent to Hardy's serious medical needs in violation of the Eighth Amendment for failure to provide medical treatment for chronic medical conditions; and
>
> **Count 7 –** a state law claim for IIED against Lang for failure to provide medical treatment for chronic medical conditions.

(Doc. 89).[2]

Defendants move for summary judgment arguing that Butler, Walls and Crain did not have sufficient personal involvement in Hardy's medical care; that Butler, Walls, Crain, Lang, Rayburn and Cady were not deliberately indifferent to Hardy's medical needs; that they are entitled to judgment on the merits of the IIED claims; that they are entitled to qualified immunity; and that they are entitled to state-law sovereign immunity and public official immunity for Hardy's IIED claims. Hardy counters that genuine issues of fact exist on all his counts against each of the Defendants.

## FACTS

Hardy is an inmate within the IDOC incarcerated at Menard since May 2014. He received an orientation manual on May 23, 2014.[3] The Menard orientation manual regarding the receipt of medications provides in pertinent part: "1. Be prepared to present your I.D. card. 2. Have water or another liquid available when the staff person gives you your pill. 3. Swallow the pill immediately in the direct observation of the staff. Be prepared to state your name and I.D. number and otherwise verify ingestion/swallowing

---

[2] Hardy was also allowed to proceed on a claim against Wexford Health Sources, Inc. ("Wexford"). On May 15, 2018, the Court granted Hardy's motion to dismiss voluntarily the claims against Wexford and dismissed with prejudice the claims against Wexford (Doc. 158).

[3] While Hardy admits he received an orientation manual at Menard, he disputes that the one Defendants cite to in support of summary judgment was his orientation manual as it is not signed by him and it was not introduced at his deposition.

to the satisfaction of the Health Care Staff member. 4. Failure to comply with the procedure and to follow this procedure will constitute a refusal of medication, and it may be discontinued as determined by the physician within clinical discretion. 5. Return the dispensing container to the Health Care Unit staff member."

Butler was the Warden of Menard from April 14, 2014 to September 30, 2016. From April 16, 2016 through September 20, 2016, Butler was also Chief of Programs for the State; thus, assistant wardens covered daily operations during that time. Butler has no independent recollection of Hardy, and Butler is not a medical professional.

Butler reviewed a grievance from Hardy dated August 15, 2014, which was received in the Warden's office on August 26, 2014. On August 27, 2014, Butler deemed this grievance an emergency. Butler also reviewed a grievance from Hardy dated July 15, 2015, which was received in the Warden's office on July 25, 2015. On July 27, 2015, Butler also deemed this grievance an emergency. Butler furthermore reviewed two more of Hardy's grievances dated September 4, 2015 and September 12, 2015, which she deemed as emergencies on September 15, 2015 and October 13, 2015, respectively.

Walls was the Health Care Unit Administrator at Menard from 2014 to 2018. Walls reviewed a July 16, 2015 grievance from Hardy complaining about his medications, medical treatment, problems due to extreme heat and the need for a second fan. Walls responded to Hardy on July 29, 2015. Walls indicated that Hardy recently received medical treatment and that she would put him in nurse sick call if he was having further difficulties. Walls also provided Hardy information regarding his September 11, 2015 grievance, wherein Hardy complained about not receiving his medication due to not

having a cup. Walls at one point gave Hardy a Styrofoam cup. Walls also had a Styrofoam cup removed by prison security. One of the officers gave Hardy a Styrofoam cup which was later removed by another officer. (Doc. 178-1, p. 24, 26).

Crain was the Nursing Supervisor from January 2012 until August 2018. Crain declared that as the Nursing Supervisor she did not provide direct medical care to inmates. (Doc. 178-4, p. 1).

Lang was a nurse and provided medications to inmates. Lang declared that Hardy refused his medications and refused to attend sick call on multiple occasions. She also never refused to provide Hardy medication because he did not have a cup. Lang further stated that she never refused to provide medical care if someone did not sign the copay. (Doc. 178-5).

Rayburn is a nurse at Menard who generally works the 3-11 p.m. shift. She is responsible for providing inmates with medications. Rayburn testified that she has never refused an inmate medication because he did not have a cup in his possession. (Doc. 178-7, p. 8).

Cady was a nurse at Menard who generally worked the day shift. Because she worked the day shift, Cady typically did not dispense medications. Medications were typically dispensed on the evening and midnight shifts. (Doc. 178-6, p. 7). As to providing inmates medication, Cady testified "that they are supposed to be at the front of their cell with a container of water or milk or juice or soda. Whatever they have. We're not – required to make them drink just water. They can have whatever they want; okay . . . But that procedure is for their protection along with our protection. And, again to make sure

they're not cheeking their meds. We give them the meds out of the envelope, they put them in their hand, they put them in their mouth, and they drink right there. And then I always check to make sure that they don't have them in their cheek, they're not under their tongue, or whatever the case may be." *Id*. at p. 9. Cady further testified that there is no reason for an inmate not to have liquid with which to take the medication and that she has provided inmates with cups. *Id*. at p. 10.

Hardy's medical records document which medications he was prescribed and which medications were given and taken by him. The psychiatrist at Menard eventually discontinued Hardy's psychiatric medications citing noncompliance.

Hardy testified that he spoke to Butler a couple of times about his medical issues, including his blood pressure issues and that he notified her through his grievances of his medical complaints because she, as the Warden "could have pointed to someone to do something about it and that never got done." (Doc. 178-1, p. 11).

Hardy also testified that he complained to Walls about not receiving his medication and that in response she ultimately secured for him a cup for use in taking his medication. *Id* at. p. 38, 39.

As to Crain, Hardy testified that he "explained to her that I take several different medications. You know what I'm saying. I was behind the door, and I thought I had become heat sensitive." *Id*. at p. 33. Additionally, Hardy testified Crain "was one of the nurses as well that was passing out medication as well" that she was a "regular nurse" and that she did not give him medication. *Id*. at p. 37. Hardy also felt that Crain should

have put him on nurse sick call and that she should have seen him but did not. *Id.* at p. 36.

Hardy testified that in September 2014, Lang refused to give him his medication because he came to the cell door without a cup even though he told Lang he could swallow the medicine without a cup. *Id.* at p. 22. Hardy admitted that he got juice or milk on his tray every day, even while in segregation. Hardy further testified that it is against the rules for inmates to save the cartons and that cartons are considered contraband because inmates burn them. *Id.* at p. 23. Hardy also testified that Lang told Dr. Trost that Hardy should not be given his GERD medication. *Id.* at p. 21. Hardy further alleged that he asked Lang why he was being asked to sign for a copay and that she walked away from him. However, Hardy indicated that he did not refuse to sign. *Id.* at p. 20, 21, 41. Hardy also averred that there were several occasions from May to July 2014 that he was on the sick call list, but no one came to get him so he missed going out to the yard. *Id.* p. 20.

Hardy also testified that Rayburn refused to give him his medication several times as "she was the 5-day a week over there." Hardy testified that he had a conversation with Rayburn and that she refused him his medication because of the lack of a cup. On one occasion, Hardy claims that Rayburn refused to give him medications, and he asked to see the lieutenant so that he could explain the situation and get his medications. *Id.* at p. 29.

Lastly, Hardy testified that Cady refused to give him his medications on two occasions for not having a cup and that he had an interaction with her at sick call about acid reflux medicine. *Id.* at p. 31, 32.

## ANALYSIS

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. PROC. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof." *Celotex*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support that assertion by citing to particular materials in the record or by showing that the materials in the record do not establish the absence of a genuine dispute. *See* FED. R. CIV. PROC. 56. If the non-moving party does not show evidence exists that would reasonably allow a fact-finder to decide in its favor on a material issue, the court must enter summary judgment against the non-moving party. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince

a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)(quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). The Court's role at summary judgment is not to evaluate the weight of evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-592. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

Here, Defendants do not affirmatively dispute the first element (*see generally* Doc. 178), so the Court will assume for the purposes of this Memorandum and Order that Hardy had an objectively serious medical condition. Thus, the only question for the Court is whether Defendants acted with deliberate indifference with respect to Hardy's condition.

To show that prison officials acted with deliberate indifference, a plaintiff must put forth evidence that prison officials not only knew that the prisoner's medical conditions posed a serious health risk, but they consciously disregarded that risk. *See*

*Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Id. Accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(stating that "[d]eliberate indifference is intentional or reckless conduct, not mere negligence"); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)(noting that "negligence, even gross negligence does not violate the Constitution.").

For a medical professional to be held liable under the deliberate indifference standard, he or she must respond in a way that is "so plainly inappropriate" or make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards," that it gives rise to the inference that they intentionally or recklessly disregarded the prisoner's needs. *Holloway*, 700 F.3d at 1073; *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008)(quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). In other words, a prison medical professional is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citation omitted).

"But deference does *not* mean that a defendant automatically escapes liability any time he invokes professional judgment as the basis for a treatment decision. When the plaintiff provides evidence from which a reasonable jury could conclude that the defendant didn't *honestly* believe his proffered medical explanation, summary judgment is unwarranted." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). With these standards in mind, the Court considers whether Hardy has put forth enough evidence to survive summary judgment.

First, Defendants Butler, Walls and Crain argue that they cannot be liable under § 1983 without direct, personal involvement. Specifically, these Defendants contend that they were not personally responsible for providing Hardy with medication and cannot be held liable for the actions of their subordinates. Further, these Defendants argue that they are not liable simply because they responded to Hardy's grievances.

In response, Hardy contends that these three Defendants did have direct involvement in the deprivation of his constitutional rights in that he complained to these Defendants on various occasions about his medical issues. Hardy complained personally to both Butler and Walls and through the grievances (as to all three) and nothing was done. Based on Hardy's testimony regarding his interactions with these Defendants, the Court finds that the record contains issues of disputed material facts that a jury must decide as to whether these Defendants were personally involved in the denial of Hardy's medical treatment.

Next, Butler, Walls, Crain, Lang, Rayburn, and Cady all argue that they were not deliberately indifferent to Hardy's medical needs and heat issues. Regarding his medical issues, Defendants claim that Hardy was offered nurse sick call, which at times Hardy refused to attend, mental health treatment, which at times Hardy refused to participate, and was offered medication, which he often refused to take. Again, when viewing the evidence in the light most favorable to Hardy, there is evidence in the record from which a reasonable jury could conclude that Lang, Rayburn, Cady and Walls were deliberately indifferent. They were all aware what medications Hardy was taking, and for what purpose, and according to Hardy they refused to administer the medicines to him simply

because he did not possess a cup. Furthermore, a reasonable jury could conclude Lang was deliberately indifferent when she ignored Hardy's requests for medical care due to the high temperatures in his cell simply because he could not afford the copay.

Likewise, a reasonable jury could conclude that Butler and Crain were deliberately indifferent as well. Butler, for example, was aware that Hardy was not receiving his medications (through Hardy personally and via the grievances) and refused to intervene. Similarly, a reasonable jury could find that Crain consciously disregarded Hardy's serious medical needs, by merely instructing Hardy in a letter to follow sick call procedures without taking any further action. Thus, the Court finds there are genuine issues of material facts that a jury must decide.

**Qualified Immunity**

The undersigned also finds that Defendants are not entitled to qualified immunity. "Generally, qualified immunity protects government agents from liability when their actions do not violate 'clearly established statutory or constitutional violations of which a reasonable person would have known.'" *Hernandez v. Cook Cnty. Sherriff's* Office, 634 F.3d 906, 914 (7th Cir. 2011)(citing *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010)). "It protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Burritt v. Ditlefsen¸*807 F.3d 239, 249 (7th Cir. 2015)(quoting *Mallery v. Briggs*, 475 U.S. 335, 341 (1986)). In 2014, it was clearly established that medical treatment of prisoners would amount to cruel and unusual punishment if the conduct likely demonstrated a deliberate indifference to the prisoner's condition and an unnecessary and wanton infliction of pain.

*See Estelle v. Gamble*, 97 S.Ct. 285 (1976). Thus, Defendants are not entitled to qualified immunity.

**Intentional Infliction of Emotional Distress**

To survive summary judgment on his IIED claims, Hardy must show that: "(1) [Defendants'] conduct was extreme and outrageous; (2) [Defendants] either intended to inflict severe emotional distress or knew that there was at least a high probability that [they] would inflict severe emotional distress; and (3) the conduct did cause severe emotional distress." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010)(citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Illinois courts have required a "heightened level of egregiousness" and conduct that has been "outrageous" and "extreme" to maintain an IIED claim. "IIED requires more than 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (citation and internal quotation marks omitted).

Under Illinois law, a defendant's conduct must be such that the "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!'" *Honnaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citations omitted). In *McGrath*, for example, the Supreme Court of Illinois cited non-exclusive factors which can help inform this rather fluid standard. *See McGrath*, 533 N.E.2d at 809–810. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id*.

Viewing the facts in the light most favorable to Hardy, the Court finds that he has presented sufficient factual questions that a jury should decide. A reasonable jury, for

example, could conclude that depriving an inmate of prescribed medications simply because he did not have a cup (that was confiscated by prison staff) or could not afford a copay could cause emotional distress. This conduct could also "go beyond all possible bounds of decency," particularly when some of the medications were for the treatment of Hardy's mental health conditions. Likewise, the Court finds that a reasonable jury could find his claims regarding the excessive heat conditions could also cause emotional distress. Accordingly, the Court denies the Defendants' motion for summary judgment regarding Hardy's claims for intentional infliction of emotional distress.

**State Sovereign Immunity**

The Illinois State Lawsuit Immunity Act provides that the State shall not be made a defendant in any Court except as provided in either the Public Labor Relations Act (not an issue here) or the Court of Claims Act. *See* 745 ILL. COMP. STAT. § 5/1. State sovereign immunity rules apply to state law causes of action brought in federal court against state officials. *See Omosegbon v. Wells,* 335 F.3d 668, 673 (7th Cir. 2003). The Illinois State Lawsuit Immunity Act provides that the state cannot be sued unless one of a limited number of exceptions applies. *See* 745 ILL. COMP. STAT. § 5/1. One such exception is found in the Illinois Court of Claims Act, which requires all claims against the state "sounding in tort" to be heard in that court. 705 ILL. COMP. STAT. § 505/8(d). *See also Jinkins v. Lee*, 807 N.E.2d 411, 417 (2004). Thus, if Hardy's state law claims are being brought against the state itself rather than against Defendants individually, the claim must be litigated in the Illinois Court of Claims. *See Jinkins,* 807 N.E.2d at 417.

The determination of whether a state law claim is being brought against the state depends on the "issues raised" and the "relief sought," rather than on the formal designation of the parties. *Fritz v. Johnston,* 807 N.E.2d 461, 466 (2004). An action is considered to be against the state if the following factors exist: there are no allegations that the defendant acted beyond the scope of his office's authority through wrongful acts; the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment; and the complained-of actions involve matters ordinarily within the defendant's official functions. *See Richman v. Sheahan,* 270 F.3d 430, 441 (7th Cir. 2001); *Healy v. Vaupel,* 549 N.E.2d 1240, 1247 (1990); *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009).

Sovereign immunity affords no protection when it is alleged that the defendant acted with malice. *See Welch v. Ill. Supreme Court,* 751 N.E.2d 1187, 1197 (2001). "Malice" in this context means "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstance that the law will imply an evil intent." *Mgmt. Ass'n of Ill., Inc. v. Bd. of Regents of N. Ill. Univ.,* 618 N.E.2d 694, 705 (1993). Further, the "doctrine of sovereign immunity affords no protection when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Leetaru v. Bd. of Trustees of Univ. of Illinois*, 32 N.E.3d 583, 596 (Ill. 2015). Accord *Murphy v. Smith*, 844 F.3d 653, 658-659 (7th Cir. 2016).

Here, Hardy alleged that all Defendants not only committed the tort of IIED, but also that they violated the Eighth Amendment. There is disputed evidence that Defendants infringed upon Hardy's constitutional rights. As stated previously in this

Order, no prison official has the authority to ignore a prisoner's serious medical needs. Thus, the evidence in this case establishes a genuine issue of fact as to whether Defendants were deliberately indifferent to Hardy's serious medical needs in violation of the Eighth Amendment. Consequently, Hardy's state law claims against Defendants can proceed in this Court without offending the Illinois doctrine of sovereign immunity.

**Public Official Immunity**

Public official immunity is a common law doctrine that dictates public officials are immune from individual liability for "the performance of discretionary duties performed in good faith" and "unique to the particular public office." *Currie v. Lao,* 592 N.E.2d 977, 984 (Ill. 1992); *Kinzer v. City of Chi.*, 539 N.E.2d 1216, 1220 (Ill. 1989). Defendants argue that they are entitled to public official immunity on the state-law tort claims for IIED because they were performing discretionary acts that are authorized by law and that Hardy's allegations fail to rise beyond the scope of public official immunity. The Court rejects Defendants' argument.

Defendants Lang, Cady, Crain, Rayburn are not entitled to public official immunity because the duty they allegedly breached are owed by every health care professional to his or her patients, rather than an obligation incurred solely by virtue of being public employees. *See, e.g., Michigan Ave. Nat. Bank v. County of Cook*, 732 N.E.2d 528, 543 (Ill. 2000)(listing cases where public official immunity was denied to doctors and nurses because their duties arose from their professional relationship with the plaintiffs and thus were not engaged in actions of a government character). As for Butler, Walls and Crain, the evidence before the Court establishes issues of material fact as to whether

they performed their duties in good faith. Thus, the Court denies the motion for summary judgment on the basis of public official immunity.

## CONCLUSION

Accordingly, the Court **DENIES** the motion for summary judgment (Doc. 177). The Court, via separate notice, will set this matter for telephonic status conference to discuss the possibility of setting this matter for a settlement conference and possible trial dates.

**IT IS SO ORDERED**.

**DATED: February 21, 2020.**

Digitally signed by Judge Sison
Date: 2020.02.21
16:00:12 -06'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**